[Cite as *Matheny v. Matheny*, 2013-Ohio-2946.]

STATE OF OHIO       )                    IN THE COURT OF APPEALS
                          )ss:                NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE    )

JULIE MATHENY                      C.A. No.       12CA0046

      Appellant

      v.                             APPEAL FROM JUDGMENT
                                  ENTERED IN THE
RUSSELL B. MATHENY, JR.       COURT OF COMMON PLEAS
                                  COUNTY OF WAYNE, OHIO
      Appellee                 CASE No.    08-DR-0081

DECISION AND JOURNAL ENTRY

Dated: July 8, 2013

---

MOORE, Presiding Judge.

**{¶1}** Plaintiff, Julie Matheny, appeals from the judgment of the Wayne County Court of Common Pleas. We reverse and remand this matter to the trial court for further proceedings consistent with this opinion.

## I.

**{¶2}** In 2008, Julie Matheny ("Wife") filed a complaint for divorce from Russell Matheny, Jr. ("Husband"). Thereafter, on the motion of Wife, the trial court converted the action to one for dissolution. The parties then submitted, pro se, a proposed separation agreement, consisting of a pre-printed form, which Wife indicated that she received from legal aid, on which the parties handwrote case-specific information upon blank lines and within charts. In one relevant hand-written portion, the agreement provided that Wife would receive "half $ if home is ever sold[.]" However, the child support provision was left blank on this separation agreement. The magistrate advised the parties that figures regarding child support needed to be supplied.

The parties then filed, again pro se, a second separation agreement, again using the pre-printed form, which provided that Wife would receive "half of profit if home is ever sold[.]" The trial court incorporated the second separation agreement within its decree of dissolution, which it issued on June 17, 2008.

{¶3} In February of 2012, the parties' house was sold. On April 5, 2012, Wife filed a motion in which she argued that she was entitled to one-half of the net proceeds from the sale of the house.[1] After a hearing, the magistrate issued a decision on March 21, 2012, finding that, pursuant to the parties' separation agreement, Wife was entitled to one-half of the "profit" realized from the sale. The magistrate determined that "profit" refers to "the amount received for a commodity or service in excess of the original cost." The parties did not dispute that the original construction price of the house was approximately $190,000 and the 2012 sale price of the house was approximately $188,000. Because the construction price of the house exceeded the sale price, the magistrate determined that there was no "profit" realized from the sale of the house, and, accordingly, Wife was not entitled to any proceeds from the sale. On the same date, the trial court issued a journal entry in which, on consideration of the magistrate's decision, it determined that Husband was to receive all of the proceeds from the sale of the marital residence.

{¶4} Wife filed objections to the Magistrate's Decision. On July 19, 2012, the trial court issued a judgment entry overruling the objections and adhering to its March 21, 2012 judgment entry.

---

[1] Wife's motion requested that the trial court direct a non-party title company to release to her a portion of the net proceeds from the sale of the property based upon her interpretation of the parties' separation agreement. The trial court determined that it could not direct a non-party to disburse funds, and Wife does not raise any challenge to this determination. Therefore, we have limited our discussion to the issue of the interpretation of the separation agreement.

{¶5}   Wife timely filed an appeal from the July 19, 2012 judgment entry, and she now presents one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT FAILED TO AWARD [WIFE] HER SHARE OF THE NET PROCEEDS FROM THE SALE OF THE HOME.

{¶6}   In her sole assignment of error, Wife maintains that the trial court erred by failing to award her one-half of the net proceeds from the sale of the marital home.

{¶7}   A decision to adopt a magistrate's decision "lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Kalail v. Dave Walter, Inc.*, 9th Dist. No. 22817, 2006-Ohio-157, ¶ 5, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  Therefore, generally, this Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion.  *Fields v. Cloyd*, 9th Dist. No. 24150, 2008-Ohio-5232, ¶ 9.  However, we do so "with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049-M, 2009-Ohio-3139, ¶ 18.

{¶8}   Here, Wife has challenged the trial court's interpretation of the separation agreement incorporated within the decree of dissolution, in part maintaining that the separation agreement is ambiguous.  "Separation agreements are contracts, subject to the same rules of construction as other contracts, to be interpreted so as to carry out the intent of the parties." *Musci v. Musci*, 9th Dist. No. 23088, 2006-Ohio-5882, ¶ 42, citing *Brown v. Brown*, 90 Ohio App.3d 781, 784 (11th Dist.1993).  "The intent of the parties is presumed to reside in the language they chose to use in their agreement." *Hare v. Isley*, 9th Dist. No. 26078, 2012-Ohio-3668, ¶ 9, quoting *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313 (1996).  Accordingly, when that language contained within the contract is unambiguous, "a court may look no further

than the writing itself to find the intent of the parties." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37. Ambiguity refers to "the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time[.]" *Robinson v. Beck*, 9th Dist. No. 21094, 2003-Ohio-1286, ¶ 25, quoting *Boulger v. Evans*, 54 Ohio St.2d 371, 378 (1978). The determination of whether a contract is ambiguous is a question of law that this Court reviews de novo. *Salter v. Salter*, 9th Dist. No. 26440, 2013-Ohio-559 at ¶ 6, quoting *Hahn v. Hahn*, 9th Dist. No. 11CA0064-M, 2012-Ohio-2001, ¶ 9. *See also Denman v. State Farms Ins. Co.*, 9th Dist. No. 05CA008744, 2006-Ohio-1308, ¶ 12.

{**¶9**} Here, the provision of the separation agreement at issue set forth that Wife would receive "half of profit if home is ever sold[.]" The parties do not define "profit" within the separation agreement. The magistrate determined that "profit" means "the amount received for a commodity or service in excess of the original cost." We recognize that this is a reasonable interpretation of the term "profit." *See* Merriam-Webster's Eleventh Collegiate Dictionary, 992 (2005). We also note that nowhere within the separation agreement do the parties reference the cost of the *construction* of the house. However, the parties do reference that there existed a *mortgage* on the house. In addition to the more technical meaning of "profit" applied by the magistrate, "profit" may also refer more generally to "the excess of returns over expenditure in a transaction or series of transactions[.]" *Id.* *See also* Black's Law Dictionary, 1246 ("profit" means "[t]he excess of revenues over expenditures in a business transaction"). The way in which "profit" is used in the separation agreement could reasonably be read as the excess of the sales price (return) over the mortgage balance and/or costs (expenditure) at closing (transaction).

Therefore, we conclude that, in the context of this case, the use of the word "profit" in the separation agreement is ambiguous.

{¶10} Husband appears to have focused his argument below, in part, on Wife having prepared the separation agreement, noting in his response to her motion that the term "profit" was "her own language" and characterizing her argument as one where "she did not understand the very language she used in the agreement[.]" However, to the extent that Husband may have been relying on the maxim that an ambiguity in a contract be construed against the drafter, we conclude that this principle is of limited value in this case, where the parties drafted the separation agreement pro se, and there is no indication that either party enjoyed a superior bargaining power in selecting the contractual language. *See Michael A. Gerard, Inc. v. Haffke*, 8th Dist. No. 98488, 2013-Ohio-168, ¶ 14 ("Ohio courts have generally resolved contract ambiguities against the drafter only where parties lacked equal bargaining power to select contract language."). When the terms of a separation agreement are ambiguous, a court may look to extrinsic evidence to determine the parties' intent. *See Hare* at ¶ 9, quoting *Graham* at 313-314 ("Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning."). However, here, although the trial court held a hearing during which it received extrinsic evidence as to the intent of the parties, the trial court appears to have based its decision upon what it concluded was the plain meaning of "profit." The magistrate determined in his decision:

> Because the parties were unrepresented by counsel in preparation of the agreement, doesn't necessarily mean that on a post decree motion the language or even the meaning of the language can be changed. The parties are stuck with the language used. It clearly states half of profit and not proceeds.

Profit has a few definitions but one of those pursuant to the Magistrate's dictionary indicates it is the amount received for a commodity or service in excess of the original cost. In this case the cost was over $190,000 and less than that was received upon the sale. There was no profit and therefore there would be no sharing of the remaining proceeds.

{¶11} However, the object of the court's inquiry should not be to "stick" the parties with the language used, but instead to ascertain the intent of the parties at the time the agreement was drafted. *See Musci*, 2006-Ohio-5882, at ¶ 42. Because we have concluded that the term "profit," as it was used in the separation agreement, was ambiguous, the trial court erred in failing to ascertain the parties' intent through extrinsic evidence. "Although contract interpretation is normally a question of law, it becomes a question of fact when an ambiguous term necessitates the introduction of extrinsic evidence to interpret the contract." *Maverick Oil & Gas, Inc. v. Barberton City School Dist. Bd. of Edn.,* 171 Ohio App.3d 605, 2007-Ohio-1682, ¶ 19 (9th Dist.), citing *Rongone v. Ohio Mach. Tool & Design, Inc.*, 9th Dist. No. 14706, 1991 WL 35101, *2 (Mar. 13, 1991). Accordingly, we remand this matter to the trial court to determine the parties' intent after consideration of competent extrinsic evidence.

III.

{¶12} Wife's assignment of error is sustained. The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
CARLA MOORE
FOR THE COURT

HENSAL, J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶13} I concur in the judgment given that I would reverse the judgment of the trial court. However, I would not remand the matter for further proceedings. The court below conducted an evidentiary hearing, and evidence was presented concerning the parties' intent. Mrs. Matheny testified that the intention was to split the proceeds of sale after payoff of the mortgage. This would be consistent with the notion that, during the marriage, marital funds would have been used to reduce the mortgage. Significantly, Mr. Matheny did not dispute Mrs. Matheny's testimony, nor offer any competing testimony concerning the parties' intent and agreement on

this point. Thus, I respectfully submit that there is nothing further to be done in this matter other than reverse the judgment and remand for the entry of a judgment which provides for an equal share in the proceeds of the sale of the marital home.

APPEARANCES:

DAVID E. BUTZ, Attorney at Law, for Appellant.

JOHN E. JOHNSON, JR., Attorney at Law, for Appellee.